986 F.2d 1428
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Harold MASSEY and Dorothy Massey, Plaintiffs-Appellees and
Cross-Appellants,
v.
FARMERS INSURANCE GROUP, doing business as Truck Insurance
Exchange, doing business as Truck Underwriters
Association, Defendant-Appellant and
Cross-Appellee.
 Nos. 88-2085, 88-2146.
 United States Court of Appeals, Tenth Circuit.
 Feb. 9, 1993.
 
 Before TACHA and BALDOCK, Circuit Judges, and O'CONNOR, District Judge.*
 ORDER AND JUDGMENT**
 BALDOCK, Circuit Judge.
 
 
 1
 This diversity case arising in Oklahoma involves claims for breach of an insurance contract and breach of the implied covenant of good faith and fair dealing. Following a jury trial, a judgment was entered in favor of Plaintiffs-Appellees Harold and Dorothy Massey, and they were awarded compensatory damages of $375,000, punitive damages of $4,000,000, prejudgment interest, attorneys fees and costs. Defendant-Appellant Farmers Insurance Group appeals from this judgment raising a number of alleged errors. Plaintiffs cross-appeal the district court's calculation of prejudgment interest and attorneys fees. We have jurisdiction under 28 U.S.C. § 1291.
 
 I.
 
 2
 This case arose out of an arson fire at Plaintiffs' home. Defendant insured Plaintiffs against fire loss to their home with policy limits of $75,000. Defendant's adjuster, Joe Delacerda, determined that Plaintiffs were not involved in the arson. Delacerda made a preliminary finding that the house could be repaired for approximately $45,000. Delacerda asked Mr. Massey to obtain estimates from two contractors. Mr. Massey obtained estimates from Simon-Price Construction and Gerald Eaves Construction which he submitted to Defendant. Both of these estimates exceeded $100,000 and involved demolishing the remaining structure and completely rebuilding the house.
 
 
 3
 After receiving Plaintiffs' estimates, Defendant adjusted its loss reserves up to the policy limits. Delacerda then obtained an estimate to repair the house for approximately $47,000 from First General Services of Tulsa. Contrary to Defendant's own policy, Delacerda did not obtain a second estimate. Three weeks after receiving Plaintiffs' estimates, Defendant notified Plaintiffs that their policy on the damaged house as well as a separate policy on Plaintiffs' business would be cancelled effective at the end of the month. Soon thereafter, Defendant retained an attorney, Ray Wilburn, to represent it in the matter.
 
 
 4
 The central dispute at this point was whether repairing the house would restore it to its prefire condition or whether the house would have to be torn down and completely rebuilt to restore it to its prefire condition. With the parties at an impasse, Defendant invoked the statutory appraisal clause of the policy. See Okla.Stat.Ann. tit. 36, § 4803 (West 1990). This clause provides that in the event that the parties fail to agree on the amount of loss, either party may invoke the appraisal process. Once this process is invoked, each party is required to select a competent and disinterested appraiser. The appraisers then select an umpire, and, if the appraisers cannot agree on an umpire, a court shall select the umpire. Each appraiser then submits an itemized appraisal of the loss. The appraisers' differences are submitted to the umpire who then determines the amount of the loss. Each party is expected to bear the cost of its own appraiser, and the parties equally share the cost of the umpire. Plaintiffs offered evidence at trial that it was contrary to Defendant's company policy to invoke the appraisal process, although Defendant sharply contested this fact claiming that the training manual upon which Plaintiffs relied was outdated and no longer reflected company policy.
 
 
 5
 Defendant initially appointed attorney Wilburn as its "disinterested" appraiser despite the fact that Wilburn was already actively representing Defendant as its attorney in this matter. Moreover, Wilburn's firm did a significant amount of other legal work on Defendant's behalf, receiving over $2.4 million in fees from Defendant for a two-year period. After Plaintiffs objected to Wilburn's capacity to be disinterested and to his competency as an appraiser, Defendant substituted Peter Murlowski as their appraiser. Murlowski was employed by First General Services of Tulsa--the firm that had earlier given Defendant an estimate to repair the house. Evidence at trial indicated that First General depended on insurance repair work for 95% of its business, and 25% of its business came from Defendant. Wilburn informed Murlowski that Defendant expected Murlowski to stand by his initial estimate. Upon inspecting the house, Murlowski maintained that the house could be repaired but adjusted his initial estimate of approximately $47,000 upward by approximately $2,000.
 
 
 6
 Plaintiffs appointed Dan Simmons of Simmons-Price Construction, which had prepared one of Plaintiffs' earlier estimates to rebuild the house. Simmons maintained that the house would have to be completely rebuilt at a cost of approximately $100,000 to restore it to its prefire condition. Thus, Simmons and Murlowski were unable to agree, and neither appraiser suggested the appointment of an umpire.
 
 
 7
 Plaintiffs filed suit in state district court for breach of contract and breach of the implied covenant of good faith and fair dealing. Subsequently, Defendant moved the court for the appointment of an umpire pursuant to the statutory appraisal process. At the suggestion of Defendant's counsel, the court appointed David Lambert, a local builder who specialized in commercial building and served on the Board of Directors of two insurance companies. Lambert inspected the property and received incomplete estimates from Murlowski and Simmons. The Murlowski estimate did not have any dollar values placed on it, and the Simmons estimate was merely three lines rather than the itemized estimate he had earlier provided to Defendant. Lambert never attempted to negotiate a compromise between Murlowski and Simmons. Rather, Lambert prepared a report finding the house could be rebuilt at a cost of approximately $49,000, consistent with the Murlowski estimate. Although Defendant tendered payment, Plaintiffs rejected the settlement, dismissed their retained attorney, and, acting pro se, moved the court to reconsider the umpire's estimate on the basis of alleged improprieties in the appraisal process. With their motion to reconsider pending, Plaintiffs, upon the advice of their newly retained counsel, dismissed their state action without prejudice under Okla.Stat.Ann. tit. 12, § 683 (West 1988).
 
 
 8
 Plaintiffs refiled their suit in the Oklahoma federal district court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. Following a jury trial, Plaintiffs were awarded $75,000 for loss of their home, $15,000 for additional living expenses and $300,000 in consequential damages for Defendant's breach of the insurance policy as well as $4,000,000 in punitive damages for Defendant's breach of the implied covenant of good faith and fair dealing. The district court further awarded Plaintiffs attorney fees of $376,275, prejudgment interest exceeding $390,000 and costs totalling $44,766.
 
 II.
 
 9
 Among its many contentions, Defendant initially asserts that the state court umpire's damage appraisal of Plaintiffs' home is conclusive on the issue of the amount necessary to restore the dwelling to its prefire condition, and thus fixed the damages due on the dwelling. Defendant further asserts that if the umpire's award is valid, then Defendant could not have acted in bad faith because Plaintiffs' case rests upon Defendant's purportedly improper handling of the appraisal process.
 
 
 10
 In the interest of comity, and pursuant to Okla.Stat.Ann. tit. 20, §§ 1602-1605 (West Supp.1990), we certified the following question to the Oklahoma Supreme Court:
 
 
 11
 Under Oklahoma law, what is the preclusive effect of a court-appointed umpire's damage appraisal under a statutorily-mandated provision of a fire insurance policy, where the insured, as of right, dismisses without prejudice an initial lawsuit without challenging the umpire's appraisal and, thereafter, institutes a subsequent lawsuit on the same cause of action in another court?
 
 
 12
 Massey v. Farmers Ins. Group, No. 88-2085, slip op. at 2 (10th Cir. Mar. 26, 1990) (certification order). The Oklahoma Supreme Court has since answered the question by holding that "a court-appointed umpire's damage appraisal under the statutorily-mandated provision of a fire insurance policy, [Okla.Stat.Ann. tit. 36, § 4803(G) (West 1990) ], has no preclusive effect upon the party who did not demand the appraisal process." Massey v. Farmers Ins. Group, 837 P.2d 880, 885 (Okla.1992). Accordingly, because Plaintiffs did not demand the appraisal process, the earlier appraisal by the state court appointed umpire has no preclusive effect on Plaintiffs' present action. Therefore, the district court did not err in denying Defendant's motion for summary judgment and motion for a directed verdict on this issue.
 
 III.
 
 13
 Defendant raises three challenges to the sufficiency of the evidence: (A) the evidence was insufficient to support the contractual damage award for additional living expenses; (B) the evidence was insufficient for the jury to find that Defendant breached the implied covenant of good faith and fair dealing; and (C) the evidence was insufficient for the jury to find that Defendant acted with fraud, malice or oppression. We view the evidence and all reasonable inferences therefrom in the light most favorable to Plaintiffs and can reverse only when it is clear that reasonable minds could not differ on the conclusion. Pytlik v. Professional Resources, Ltd., 887 F.2d 1371, 1380 (10th Cir.1989); McKinney v. Gannett Co., Inc., 817 F.2d 659, 663 (10th Cir.1987).
 
 A.
 
 14
 The jury awarded Plaintiffs $15,000 in additional living expenses. Such expenses were covered under a provision of the policy which read as follows:
 
 
 15
 If a covered property loss makes the residence premises unfit to live in, we cover the necessary increase in living expense incurred by you so that your household can maintain its normal standard of living. We shall pay for the shortest time needed to (a) repair or replace the damaged property or (b) permanently relocate.
 
 
 16
 Harold Massey testified that he requested additional living expenses of $906 per month which were denied by Defendant. Defendant claims that this request was based on what Mr. Massey perceived as the fair market value of the house destroyed in the fire, and that Defendant had changed its policy so as to no longer reimburse for the fair market value of the destroyed property. However, whether the additional living expense provision included the fair market value of the damaged property during the period of its restoration was a disputed fact properly left to the resolution of the jury. Further, Defendant overlooks the additional testimony that after it cancelled Plaintiffs' insurance, Plaintiffs incurred $10,000 to $12,000 in additional expenses to make another building on Plaintiffs' property habitable. Taking all reasonable inferences from this testimony in Plaintiffs' favor, we cannot say that reasonable minds could not differ on the conclusion.
 
 B.
 
 17
 Defendant next claims that the evidence was insufficient for the jury to find that Defendants breached the implied covenant of good faith and fair dealing. The parties agree that Oklahoma recognizes a cause of action sounding in tort for the bad faith breach of an insurance contract. See Buzzard v. Farmers Ins. Co., 824 P.2d 1105, 1108-09 (Okla.1991); McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 588 (Okla.1981). However, the parties dispute the quantum of evidence necessary to submit this issue to the jury.
 
 1.
 
 18
 Defendant argues that unless Plaintiffs were entitled to a directed verdict on the breach of contract claim, the bad faith claim should not have been submitted to the jury. Defendant relies on National Sav. Life Ins. Co. v. Dutton, 419 So.2d 1357 (Ala.1982), in which the Alabama Supreme Court stated, "[o]rdinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury." Id. at 1362.
 
 
 19
 In support of its contention that Oklahoma follows the rule announced in Dutton, Defendant directs us to Christian v. American Assurance Co., 577 P.2d 899 (Okla.1977), Timmons v. Royal Globe Ins. Co., 653 P.2d 907 (Okla.1982), and Manis v. Hartford Fire Ins. Co., 681 P.2d 760 (Okla.1984). In Christian, which was the first Oklahoma case to recognize a cause of action sounding in tort against an insurer for breaching an implied duty to deal fairly and act in good faith with its insured, the court affirmed a bad faith judgment based on an insurer's failure to pay a claim to which it had no defense. However, Christian does not suggest that an insurer's absence of a defense to a breach of contract claim is a necessary predicate to a bad faith cause of action. Indeed, in Timmons, also relied on by Defendant, the court affirmed a bad faith judgment based on the insurer's actions in investigating the claim, despite the fact that the insurer had several defenses to the contract action.[1] The Timmons court recognized that "[t]he essence of the cause before the Court is failure to deal fairly and in good faith with an insured and as such, the jury may be shown the entire course of conduct between the parties to arrive at a determination of whether that standard had been breached or not." 653 P.2d at 917. While the Oklahoma Supreme Court reversed a bad faith judgment in Manis where the insurer refused to pay a claim for fire loss claiming that the insured intentionally set the fire, the bad faith claim was based solely on the insurer's refusal to pay and there was no other evidence that insurer failed to deal fairly with the insured. Thus, even though the jury rejected the insurer's arson defense on the contract claim, the Manis court found that there was no evidence that the insurer acted in bad faith in pursuing the defense.
 
 
 20
 In contrast to Manis, Plaintiffs' bad faith claim was based on Defendant's abuse of the statutory and contractual appraisal process.[2] The Oklahoma Supreme Court has made it clear that the question of bad faith turns on the intent and reasonableness of the insurer's action, and the "crucial consideration" in determining whether to submit the issue to the jury is "the relative merit in the evidence supporting [the insurer's] defense." Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1361 (Okla.1989). In McCorkle v. Great Atl. Ins. Co., 637 P.2d 583 (Okla.1981), the Oklahoma Supreme Court rejected the argument that allowing a bad faith cause of action denies insurers their right to have a judicial determination on the amount due on a fire insurance policy, noting that "a party prosecuting a claim of bad faith must plead the elements of the tort and he/she has the burden of proof. The pleading and proof requirements are the same as in other lawsuits." Id. at 587. Clearly rejecting the argument raised by Defendant here, the McCorkle court stated that
 
 
 21
 the essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct ... and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.
 
 
 22
 Id. More recently, the Oklahoma Supreme Court recognized that whether or not an insured is legally entitled to recover under the policy is not the "controlling issue" in a bad faith action based on a denial of coverage; rather, the bad faith issue, in such a case, turns on "whether [the insurer], at the time [the insureds] made their claim, was in possession of information to establish that its refusal to pay was in good faith...." Buzzard v. McDanel, 736 P.2d 157, 159 n. 3 (Okla.1987). Similarly, in McCoy v. Oklahoma Farm Bureau Mut. Ins. Co., 841 P.2d 568 (Okla.1992), the court held that the issue of bad faith was properly submitted to the jury despite the existence of a triable issue as to whether the insured had burned down his own house. Id. at 570-72. Thus, we reject Defendant's argument that Plaintiffs must have been entitled to a directed verdict on the breach of contract claim in order to submit the bad faith claim to the jury.
 
 2.
 
 23
 We turn to the question of whether a reasonable jury could have found that Defendant breached the implied covenant of good faith and fair dealing. Plaintiffs' cause of action was based on Defendant's handling of their claim, specifically Defendant's abuse of the statutory and contractual appraisal process. The Oklahoma Supreme Court has recognized that the manner in which an insurer handles a claim may be the basis for a bad faith judgment, see Buzzard v. Farmers Ins. Co., 824 P.2d 1105, 1109 (Okla.1991); Timmons v. Royal Globe Ins. Co., 653 P.2d 907, 917-18 (Okla.1982), as well as actions by an insurer which unreasonably withhold the payment of claims. Christian v. American Assurance Co., 577 P.2d 899, 904-05 (Okla.1977).
 
 
 24
 Taken in the light most favorable to Plaintiffs, the evidence at trial amply supported Plaintiffs' claim that Defendant acted in bad faith by manipulating and abusing the statutory and contractual appraisal process. First, according to Defendant's own training manual, it was against company policy to invoke the appraisal process or to even call it to the attention of the insured.[3] Nevertheless, Defendant did invoke the appraisal process following the fire which destroyed Plaintiffs' home. Second, under the appraisal process, each party is required to appoint a "competent and disinterested appraiser" once either party has made a written demand for an appraisal. Okla.Stat.Ann. tit. 36 § 4803 (West 1990). Substantial evidence was presented that the first appraiser appointed by Defendant was not competent, and that neither of the two appraisers appointed by Defendant were disinterested. Defendant's first appraiser, Wilburn, was an attorney who did substantial work on Defendant's behalf, and indeed had been retained by Defendant to represent it in its dealings with Plaintiffs. The second appraiser, Murlowski, relied on insurance work, a substantial portion of which was from Defendant, for his livelihood, and he had earlier provided an estimate for repairing the house. Moreover, there was direct evidence, in the form of a letter by one of Defendant's attorney who happened to be an associate of Wilburn, that Defendant attempted to improperly influence the second appraiser by conveying its expectation that the appraiser would stand by his estimate to rebuild the house. Thus, Defendant's overt failure to follow the terms of its own policy regarding the appraisal process provides substantial evidence that Defendant acted unreasonably and in bad faith.
 
 
 25
 Other evidence submitted by Plaintiffs could reasonably lead the jury to infer that Defendant attempted to pressure Plaintiffs into accepting the lesser amount to repair the house, as opposed to having it rebuilt. Defendant took an average of thirty-seven days to submit a loss for authority to settle; however, in this case, Defendant took eighty-five days to submit the contents portion of Plaintiffs' claim. A reasonable inference is that Defendant delayed payment on the contents in order to pressure Plaintiffs to settle on the structure, thereby supporting Plaintiffs' assertion that Defendant acted unreasonably and in bad faith in handling Plaintiffs' claim. Furthermore, Defendant cancelled Plaintiffs' insurance policies even though Defendant's own investigation indicated that Plaintiffs were not at fault for the fire. Again, it was reasonable for the jury to infer that this cancellation was an attempt to pressure Plaintiffs into settling the loss on the structure.
 
 
 26
 Finally, in addition to the evidence concerning Defendant's abuse of the appraisal process and the evidence supporting the inference that Defendant attempted to pressure Plaintiffs into accepting its offer, there was substantial evidence that Defendant's actions unreasonably withheld the payment of Plaintiffs' claim. There was testimony that the branch office's authority to settle a claim on a structure was limited to $40,000, and any claim in excess had to be submitted to the regional office for approval. Defendant's own estimate exceeded $40,000, yet defendant waited until June 5, 1986, almost a year after the fire, to request settlement authority from the regional officer. When authority was finally granted to settle Plaintiffs' claim for the policy limits of $75,000, Defendant never offered this amount to Plaintiffs.
 
 
 27
 In light of this evidence, and the reasonable inferences that may be drawn from it, the evidence was more than sufficient to submit the issue of whether Defendant breached the implied covenant of good faith and fair dealing to the jury.
 
 C.
 
 28
 Defendant also contends that, even if there was sufficient evidence of bad faith, the evidence was insufficient to show that Defendant acted fraudulently, maliciously or oppressively, and therefore, the punitive judgment award cannot stand. Under Oklahoma law, malice may be inferred when a party commits willful acts in reckless disregard of another's rights. Slocum v. Phillips Petroleum Co., 678 P.2d 716, 719 (Okla.1983). Our review of the evidence, and specifically Defendant's failure to follow the terms of its own policy regarding the appraisal process, convinces us that an inference of malice could properly be drawn by the jury.
 
 
 29
 Defendant raises a related argument, which although purporting to challenge the sufficiency of the jury instruction on punitive damages, appears to be based on the district court's finding, pursuant to Okla.Stat.Ann. tit. 23, § 9 (West 1987), that there was clear and convincing evidence to support the award of punitive damages. Oklahoma law requires the district court, at the conclusion of all the evidence, to make a finding outside of the presence of the jury "that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed" in order for the jury to award punitive damages. Id. When the district court makes such a finding, the limitation on punitive damages to the amount of actual damages, see id. (historical note) (discussing 1986 amendment), does not apply. Id.
 
 
 30
 The district court found that there was "certainly clear and convincing evidence that the defendant is guilty of conduct evincing the wanton and reckless disregard for the rights of others." VIII R. trans. at 1422. For the reasons heretofore stated, we believe that the district court's finding is supported by the record. Because willful acts in reckless disregard of Plaintiffs' rights may lead to an inference of malice, Slocum v. Phillips Petroleum Co., 678 P.2d 716, 719 (Okla.1983), the district court properly submitted this issue to the jury without limiting the punitive damages to the amount of actual damages.
 
 IV.
 
 31
 Defendant raises a myriad of claims alleging error in the admission of evidence. We review the district court's ruling on the admissibility of the evidence for an abuse of discretion. K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1155 (10th Cir.1985); Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1149 (10th Cir.), cert. denied, 439 U.S. 862 (1978). Even if the district court abuses its discretion by erroneously admitting particular evidence, we will not reverse a judgment when the error is harmless--i.e. when the error does not affect a substantial right of the party asserting error. K-B Trucking, 763 F.2d at 1156. See also Fed.R.Civ.P. 61; Fed.R.Evid. 103(a). "[T]he burden of demonstrating that substantial rights were affected rests with the party asserting error." K-B Trucking, 763 F.2d at 1156.
 
 A.
 
 32
 Defendant claims that the district court erred in admitting evidence concerning the worth of companies that do business under the name Farmers Insurance Group. According to Defendant, evidence of its worth, which was relevant to the issue of the amount of punitive damages, should have been limited to evidence of the worth of Truck Insurance Exchange/Truck Underwriters Association which is the named party on the insurance policy. Although Defendant has not specified the Federal Rule of Evidence which purportedly renders this evidence inadmissible, Defendant's argument appears to be based on relevancy. See Fed.R.Evid. 402.
 
 
 33
 " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Under Oklahoma law, punitive damages are awarded to punish wrongdoers for wrongs committed upon society and to deter them from such conduct in the future. Okla.Stat.Ann. tit. 23, § 9 (1987). Accordingly, evidence of the worth of a party against whom punitive damages are being sought is relevant to the issue of the amount of damages necessary to sufficiently punish and deter the party.[4] See Silkwood v. Kerr-McGee Corp., 769 F.2d 1451, 1460 (10th Cir.1985), cert. denied, 476 U.S. 1104 (1986); Spaeth v. Union Oil Co., 762 F.2d 865, 866 (10th Cir.1985), cert. denied, 476 U.S. 1104 (1986).
 
 
 34
 Nonetheless, Defendant argues that Farmers Insurance Group was not a party to the contract and therefore could not be liable for bad faith breach of the contract. See Timmons v. Royal Globe Ins. Co., 653 P.2d 907, 912-13 (Okla.1982). Thus, Defendant argues that evidence of the worth of Farmers Insurance Group should not have been admitted. This is a curious proposition considering that Farmers Insurance Group is the named defendant in the lawsuit. Under Defendant's reasoning, evidence of its worth should have been limited to the worth of Truck Insurance Exchange/Truck Underwriter Association, a subordinate entity within the rubric of companies forming Farmers Insurance Group. In light of the evidence in the record showing a significant financial relationship between Farmers Insurance Group and Truck Insurance Exchange/Truck Underwriters Association, Farmers Insurance Group's control over the subordinate entity in the handling of claims in general, and the handling of the claim in this case in particular, we believe that the worth of Farmers Insurance Group is the relevant inquiry in determining the amount of damages sufficient to punish and deter Defendant from its tortious conduct.
 
 B.
 
 35
 Defendant next claims that the admission of evidence concerning its granting of settlement authority in the amount of $75,000 to its branch office in June 1986 violated Fed.R.Evid. 408. This rule provides that
 
 
 36
 [e]vidence of (1) furnishing or offering or promising to furnish ... a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for ... the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.
 
 
 37
 Fed.R.Evid. 408. Defendant's argument fails for at least two reasons. First, the evidence was undisputed that Defendant never furnished, offered or promised to furnish $75,000 to settle Plaintiffs' claim, nor was this evidence of conduct in compromise negotiations. Thus, the evidence was not the type for which a Rule 408 objection will lie. Second, the evidence was not offered to prove liability. Rather, Plaintiffs offered this evidence to show that, by June 1986, Defendant had evaluated the loss at the policy limits but failed to offer this amount to Plaintiffs. Therefore, because the evidence was relevant to the issue of whether Defendant unjustifiably withheld payment of the claim thereby breaching the implied covenant of good faith and fair dealing, we find no abuse of discretion in its admission.
 
 C.
 
 38
 Defendant next contends that the district court erred in admitting evidence that Defendant cancelled Plaintiffs' three other policies following the fire. Defendant's sole argument on appeal is that such evidence was not admissible because the cancellation of the policies did not violate Okla.Stat.Ann. tit. 36, § 4807 (West 1990), which limits the reasons insurers may cancel policies. Whether or not the cancellation of the policies violated state law, this evidence was properly admitted to show the course of dealing between Defendant and Plaintiffs and tended to support Plaintiffs' argument that Defendant cancelled the policies to pressure Plaintiffs into settling the loss on their dwelling. Accordingly, we find no abuse of discretion in admitting this evidence.
 
 D.
 
 39
 Defendant argues that the district court erred in admitting the depositions of Charles Medlock, an employee of defendant, and Peter Murlowski, an independent contractor whom Defendant hired as its second appraiser. Again, Defendant's brief does not specifically articulate why the deposition testimony was inadmissible. However, Defendant asserts that the videotaped depositions should not have been admitted because both persons were available to testify and because Murlowski was not an agent of Defendant. Further, Defendant argues that the district court's informing the jury that the deposition testimony were admissions against interest was prejudicial to Defendant. While we do not necessarily agree with the specifics of Defendant's argument, we agree that district court abused its discretion in admitting the videotaped depositions.
 
 
 40
 The use of depositions in a court proceeding is governed by Rule 32 of the Federal Rules of Civil Procedure. The deposition must be admissible under the rules of evidence[5] and may only be admitted against a party who was present or represented at the deposition. Fed.R.Civ.P. 32(a). Moreover, Rule 32 further limits the admissibility of depositions in court proceedings. A "deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness, or for any other purpose permitted by the Federal Rules of Evidence." Fed.R.Civ.P. 32(a)(1).[6] Neither Medlock nor Murlowski testified prior to the introduction of their deposition; therefore, their depositions were not admissible as impeachment. Rule 32 also permits "the deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party" to be used in a court proceeding by an adverse party. Fed.R.Civ.P. 32(a)(2). While Plaintiffs claim that Medlock and Murlowski were agents of Defendant, there is no contention that they were "officers, directors, managing agents, or persons designated pursuant to Rule 30(b)(6) or 31(a)" to testify on behalf of Defendant. Finally, Rule 32 permits the use of depositions in court proceedings when the witness is unavailable to testify for particular reasons or when the court finds "exceptional circumstances." Fed.R.Civ.P. 32(a)(3). Here, both witnesses were available to testify, and there is no claim that exceptional circumstances existed. Accordingly, the depositions of Medlock and Murlowski were not properly admitted into evidence.
 
 
 41
 Having found error in the admission of the depositions, we turn to the question of whether it affected a substantial right of Defendant. We note that since both witness were available, Defendant had the opportunity to call them to the stand to rehabilitate their testimony, and, in fact, did so with respect to Murlowski. Further, Medlock's deposition was videotaped and the tape was presented to the jury, thereby permitting the jury to view the demeanor of the witness. Finally, Defendant offers no argument as to how it was prejudiced by the admission of the depositions, and given that the testimony appears to be largely undisputed,[7] we fail to see how a substantial right of Defendant has been affected. Thus, we hold that the district court's error in admitting the depositions of Medlock and Murlowski was harmless.
 
 V.
 
 42
 Defendant next claims error in the instructions to the jury. In reviewing jury instructions, we must "consider all that the jury heard and ... decide not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine these issues." Durflinger v. Artiles, 727 F.2d 888, 895 (10th Cir.1989). See also Ramsey v. Culpepper, 738 F.2d 1092, 1098 (10th Cir.1984). "[A]n error in the jury instructions will mandate reversal only if the error is determined to have been prejudicial, based on a review of the record as a whole." Durflinger, 727 F.2d at 895 (internal quotations omitted).
 
 A.
 
 43
 Defendant first contends that the district court erred in failing to instruct the jury that attorneys fees and interest should not be included in the award of damages. Given that no evidence was presented concerning attorneys fees and interest, we fail to see the necessity of such an instruction and find no abuse of discretion in failing to give it.
 
 B.
 
 44
 Defendant next contends that the district court erred in failing to give Defendant's proffered instruction concerning the contract measure of damages under the dwelling coverage provision of the policy. On the issue of damages for the breach of contract claim, the district court instructed the jury as follows:
 
 
 45
 If you find that the defendant is liable to plaintiffs on their breach of contract cause of action you must then fix the amount of money which will reasonably and fairly compensate plaintiffs for any of the following elements of damage proved by the evidence to have resulted from the defendant's breach of contract:
 
 
 46
 1. Fire and casualty loss to plaintiff's residence;
 
 
 47
 2. Additional living expenses.
 
 
 48
 Although Defendant has not directed this court to where in the record we can find its specific proffered instruction on the issue, defense counsel characterized the instruction to the district court as limiting Defendant's liability under the dwelling coverage "as being the smallest of the ... policy limit ... replacement ... [or] the amount actually and necessarily expended to repair the house." IX R. trans. at 1428-29. Although the district court's instruction may not have been a model of completeness, in light of the alternative presented by Defendant, we cannot say that the district court abused its discretion.
 
 C.
 
 49
 Finally, Defendant claims that it was error to instruct the jury on the statutory duty of insurance companies under the Oklahoma Fair Claims Resolution Act, because the act was not effective until June 1986 or November 1986 while the loss occurred in June 1985 and because the act does not apply to private causes of action. Although Defendant has not directed us to where in the record we can find this allegedly erroneous instruction, Defendant's objection appears to relate to the district court's instruction regarding "acts constitut[ing] unfair claim settlement practices," see Okla.Stat.Ann. tit. 36, § 1222 (West Supp.1993); IX R. trans. at 1501-02, and its instruction regarding prohibited acts by an insurer and its agent. Okla.Stat.Ann. tit. 36, § 1254 (West Supp.1993); IX R. trans. at 1502-03. Section 1222 was not effective until June 1986, and Section 1254 was not effective until November 1986.[8]
 
 
 50
 In regards to Defendant's claim that the statutes do not apply to private causes of action, our review of the record indicates that Defendant did not object to the instruction on this ground. Rule 51 of the Federal Rules of Civil Procedure provides that "[n]o party may assign as error the giving ... an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51 (emphasis added). Because Defendant's objection was limited solely to the ground that the statutes were not effective until June or November 1986, Defendant has waived the issue of whether the statutes are applicable to private causes of action.
 
 
 51
 As to Defendant's claim that the instructions were erroneous because the statutes were not effective until June or November 1986, Defendant's actions induced the trial court into giving the instruction; therefore, Defendant is precluded from raising this issue on appeal by the "invited error" doctrine. "When a party wishing to raise a new issue on appeal has by its words or actions invited the alleged error below, it is particularly inappropriate to consider that theory of relief on appeal." Hokansen v. United States, 868 F.2d 372, 378 (10th Cir.1989) (citation omitted). See also Gundy v. United States, 728 F.2d 484, 488 (10th Cir.1984) ("[A]n appellant may not complain on appeal of errors which he himself induced or invited."). After Defendant objected to these instructions on the ground that the statutes were not effective until after the date of Plaintiffs' loss, Plaintiffs offered to amend the instruction to specifically inform the jury that Defendant's statutory duties applied only to its acts taken after the effective date of the statute. Defendant declined Plaintiffs' amendment claiming that it "would then place the burden on an insurance adjuster to anticipate what the law might be a year later." IX R. trans. at 1433. According to defense counsel, the instruction as offered to be amended by Plaintiffs would "have a prejudicial effect;" id., however, defense counsel failed to specify, either in the district court or on appeal, how the instruction as amended would have been prejudicial. The district court indicated that it was inclined to amend the instruction to make clear that Defendant's statutory duty only applied to acts taken after the effective date of the statute, but declined to amend the instruction based on Defendant's objection to the amendment. While we agree that any statutory duty of Defendant would only arise after the effective date of the statute, it is undisputed that Defendant continued to handle Plaintiffs' claim after the effective dates of the statutes. Given that the statutes were in effect at the time of at least some of Defendant's acts which gave rise to Plaintiffs' bad faith claim, we do not see how Plaintiffs' amendment would have prejudiced Defendant, and, as noted earlier, Defendant neglects to inform us as to the nature of the prejudice. Indeed, it appears that Plaintiffs' amendment would have cured the very objection raised by Defendant on appeal. Under these circumstances, Defendant's objection to Plaintiffs' amendment invited the very error of which Defendant now complains; therefore, this issue cannot be raised on appeal.
 
 VI.
 
 52
 Defendant argues that the $4,000,000 punitive damage award violates the Eighth Amendment's proscription against excessive fines. The "Excessive Fines Clause does not apply to awards of punitive damages in cases between private parties." Browning-Ferris Indus. v. Kelco Disposal, Inc., 492 U.S. 257, 260 (1989). Thus, Defendant's argument is without merit.[9]
 
 VII.
 
 53
 Defendant argues that the district court improperly calculated the attorneys fees award. Under Oklahoma law, attorneys fees are awarded to the prevailing party in an action between an insurer and an insured. Okla.Stat.Ann. tit. 36, § 3629(B) (West 1990). The district court calculated the attorneys fees based on the time spent prosecuting both the breach of contract claim and the bad faith claim. Defendant concedes that attorneys fees are recoverable on the breach of contract claim but argues that such fees are not recoverable on the bad faith claim. Defendant argues that the district court should have apportioned the time of Plaintiffs' attorneys between the two claims. We have squarely rejected this argument. See Thompson v. Shelter Mutual Ins., 875 F.2d 1460, 1464 (10th Cir.1989). See also Oliver's Sports Center v. National Standard Ins. Co., 615 P.2d 291, 295 (Okla.1980) (recognizing recovery of attorneys fees under § 3629(B) for time spent prosecuting bad faith claim).
 
 VIII.
 
 54
 In their cross-appeal, Plaintiffs raise three arguments. First, Plaintiffs contend that the district court erred in limiting the prejudgment interest solely to the compensatory damages. Second, Plaintiffs contend that the district court erred in determining "the date the loss was payable" for purposes of calculating the award of prejudgment interest. Finally, Plaintiffs contend that the district court erred in calculating the award of attorneys fees. We find no merit in any of Plaintiffs' arguments.
 
 A.
 
 55
 Plaintiffs first argue that punitive damages should be included in the calculation of the prejudgment interest award. Oklahoma law provides for the award of prejudgment interest "on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict." Okla.Stat.Ann. tit. 36, § 3629 (West 1990). Plaintiffs rely on Oliver's Sports Center v. National Standard Ins. Co., 615 P.2d 291 (Okla.1980), wherein the Oklahoma Supreme Court recognized that an attorney's time in prosecuting a bad faith claim could be included in the attorneys fees calculation under § 3629. Id. at 295.
 
 
 56
 In Casto v. Arkansas-Louisiana Gas Co., 562 F.2d 622 (10th Cir.1977), we held that prejudgment interest was not recoverable on a punitive damage award under Okla.Stat.Ann. tit. 12, § 727(2), a similar Oklahoma statute governing prejudgment interest on damages by reason of personal injury. Id. at 625-26. We reasoned that express terms of the statute limited prejudgment interest to a "verdict for damages by reason of personal injuries." Id. at 625. Moreover, we noted that punitive damages are in the nature of punishment, rather than compensation. Id. See also Okla.Stat.Ann. tit. 23, § 9.
 
 
 57
 While the language of § 3629, unlike the statute at issue in Casto, does not expressly preclude prejudgment interest on punitive damages, we do not believe that the Oklahoma Supreme Court would interpret § 3629 to provide for prejudgment interest on a punitive damage award. As we noted in Casto, punitive damages are designed to punish the defendant rather than compensate the plaintiff. 562 F.2d at 625. See also Okla.Stat.Ann. tit. 23, § 9 (West 1987). Awarding prejudgment interest on compensatory damages fulfills the underlying purpose of making Plaintiffs whole. By contrast, allowing prejudgment interest on punitive damages would only serve to further punish Defendant when the jury has already determined the amount necessary to sufficiently punish Defendant. Finally, the prejudgment interest statute calculates the interest from "the date the loss was payable." Okla.Stat.Ann. tit. 36 § 3629. The bad faith conduct which gave rise to the punitive damage award in this case occurred over a substantial period of time. Not only does a punitive damage award not involve payment for a "loss," Defendant had no obligation to pay an award until the jury's verdict. Thus, we do not believe the statute supports Plaintiffs' construction.
 
 B.
 
 58
 Plaintiffs also argue that the district court's determination of the date that the prejudgment interest should begin to accrue was erroneous. Under Oklahoma law, an insurer has a duty to submit a written offer of settlement or rejection of a claim within ninety days after receipt of a proof of loss. Okla.Stat.Ann. tit. 36, § 3629 (West 1990). The district court determined that the loss was payable on December 29, 1985, ninety days after Plaintiffs submitted their proof of loss to Defendant. Nonetheless, Plaintiffs argue that Defendant waived the proof of loss, and therefore they should have been awarded prejudgment interest from the date of the loss. Whether or not Defendant waived the proof of loss is a factual determination to which we give the district court's finding deference. Moreover, Plaintiffs' argument unreasonably assumes that their loss was payable on the date of the fire. Thus, we find no error in the district court's determination of the date the loss was payable.
 
 C.
 
 59
 Finally, Plaintiffs argue that the district court erred in determining the amount of attorneys fees. As earlier noted, Oklahoma law allows the prevailing party in an action between an insurer and an insured to recover costs and attorneys fees. Okla.Stat.Ann. tit. 36, § 3629 (West 1990). The district court determined the amount of attorneys fees by multiplying the hours spent by Plaintiffs' attorneys by a reasonable hourly rate and then doubling this amount to account, presumably for the contingency, which is appropriate under Oklahoma law. See Oliver's Sports Center v. National Standard Ins. Co., 615 P.2d 291, 294 (Okla.1980). Notwithstanding Plaintiffs' contention that the fee should have been 40% of the total recovery in accordance with the contract between Plaintiffs and their attorney, we cannot say the district court abused its discretion in calculating the fees as it did.
 
 
 60
 AFFIRMED.
 
 
 
 *
 The Honorable Earl E. O'Connor, Chief Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Defendant contends that Timmons supports its position because prior to the bad faith action, the insured's liability to a third party had already been discharged by the insurer and thus the contract claim had already been resolved. 653 P.2d at 911
 
 
 [2]
 We note that, although Defendant's investigation indicated that the fire was intentionally set, Defendant never sought to deny coverage on the grounds that Plaintiffs were responsible for the fire, nor did Defendant assert such a defense at trial. Indeed, the district court granted Plaintiffs' motion in limine excluding all reference to any responsibility on the part of Plaintiffs for the fire
 
 
 [3]
 Although Defendant presented testimony that the training manual did not reflect current company policy, whether Defendant complied with its own internal policy was a disputed issue for the jury's resolution
 
 
 [4]
 Defendant claims that the evidence was prejudicial because Farmers Insurance Group had assets of $10.1 billion in 1986 while Truck Insurance Exchange/Truck Underwriters Association had assets of between $700-800 million and a net worth of $356 million, thereby making the jury more inclined to award a greater amount of punitive damages. Nonetheless, we do not reach the question of prejudice in light of our holding, based on the record before us, that Farmers Insurance Group is the relevant entity
 
 
 [5]
 Although the district court stated that the deposition was an "admission against interest," it appears that what it meant was that the deposition was an admission by an agent of a party opponent. This distinction is important because an admission by the agent of a party opponent is considered non-hearsay and does not require unavailability of the declarant. Fed.R.Evid. 801(d)(2), while a statement against interest is considered an exception to the hearsay rule and does require the unavailability of the declarant. Id. 804(b)(3). While we recognize Defendant's argument that Murlowski was not its agent, and, therefore, his deposition was not admissible under Fed.R.Evid. 801(d)(2)(D), we need not resolve this issue because neither deposition was admissible under Fed.R.Civ.P. 32
 
 
 [6]
 While the rule does allow the deposition to be used "for any other purpose permitted by the Federal Rules of Evidence," this provision was added by the 1980 amendment to allow the use of depositions to bring in prior inconsistent statements admissible under Fed.R.Evid. 801(d)(1). 4A James W. Moore, Moore's Federal Practice, p 32.03, at 32-17 (2d ed. 1992). The fact that the deposition may be admissible under Fed.R.Evid. 801(d)(4)(D) as an admission by an agent of a party opponent, does not make it admissible "for any other purpose" under Fed.R.Civ.P. 32(a)(1). See 4A Moore, supra, p 32.04, at 32-25. See also Fed.R.Civ.P. 32 (Advisory Committee Note to 1980 Amendment) (noting that language of subdivision (a)(1) is "too narrow" so as to be consistent with Fed.R.Evid. 801(d)(2))
 
 
 [7]
 Medlock testified about Defendant's procedures in handling claims, the chain of command within Defendant's company, the authority to settle claims within the various levels of Defendant's company, Defendant's relationship with Wilburn, Medlock's specific request to Wilburn in June 1986 to settle Plaintiffs' claim for the policy limits, and the cancellation of Plaintiffs' other policies. Defendant has not disputed any of this testimony
 Murlowski testified about the nature of his insurance repair business and his relationship with insurance companies in general and Defendant in particular. Murlowski also testified about his work on Defendant's behalf in estimating and appraising Plaintiffs' loss. Again, Defendant has not disputed any of this testimony.
 
 
 [8]
 The district court also instructed the jury on Oklahoma's statutory limitation on the grounds for which an insurer can cancel coverage. See Okla.Stat.Ann. tit. 36, § 3639(C) (West 1990). See also IX R. trans. at 1500-01. However, Defendant's argument, which is limited to the statutes that were effective in June or November 1986, does not appear to challenge this instruction, because the statute on which it was based was effective in July 1985. See Okla.Stat.Ann. tit. 36, § 3639 (Historical and Statutory Notes)
 
 
 [9]
 While the Supreme Court has recognized that the due process clause may provide some limits on awarding punitive damages, see Pacific Mutual Life Ins. Co. v. Haslip, 111 S.Ct. 1032, 1043-46 (1991), Defendant's argument is limited to an Eighth Amendment challenge