PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 7/8/96**

TENTH CIRCUIT

---

CHERYL L. REEDER,

      Plaintiff - Appellant,

vs.

No. 95-5085

AMERICAN ECONOMY INSURANCE
COMPANY, a foreign corporation,

      Defendant - Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 93-C-991-B)

---

David H. Sanders of Sanders, Sanders & Daffern, Tulsa, Oklahoma, for Defendant-Appellant.

Eugene Robinson (John B. DesBarres with him on the brief) of McGivern, Scott, Gilliard, Curthoys & Robinson, Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before KELLY, LOGAN and ENGEL,[1] Circuit Judges.

---

KELLY, Circuit Judge.

---

      This diversity case arising in Oklahoma stems from a jury verdict against Plaintiff-

---

[1]      The Honorable Albert J. Engel, Senior Circuit Judge, Sixth Circuit Court of Appeals, sitting by designation.

Appellee American Economy Insurance Company ("AEIC") awarding Defendant-

Appellant Cheryl Reeder $612,000 in damages. Reeder filed post-trial motions for

judgment as a matter of law, or in the alternative, a new trial, requesting that the court

award her $1,500,000 and alleging various errors. The district court denied Reeder's

motions. We have jurisdiction under 28 U.S.C. § 1291 and affirm.


### Background

On June 2, 1989, Ms. Reeder was involved in a motor vehicle accident with an

uninsured motorist, Johnny Lewis.[2] At the time, Reeder was insured by an AEIC policy

which covered three motor vehicles and which provided uninsured motorist coverage of

$500,000.

In the spring of 1993, Reeder's attorney notified AEIC that Reeder was making an

uninsured motorist claim under her AEIC policy. On November 5, 1993, AEIC filed a

complaint for declaratory judgment to determine whether Reeder was entitled to recover

from AEIC under the uninsured motorist coverage. Reeder counterclaimed for

compensatory damages and damages for bad faith on the part of AEIC for failing to

timely and promptly investigate and pay her claim. The parties both moved for summary

judgment, and on August 26, 1994, the district court ruled that the AEIC policy covered

---

[2] Johnny Lewis was actually underinsured, but the term "uninsured" includes underinsured vehicles whose liability limits are less than the amount of the claim. See Okla. Stat. Ann. tit. 36, § 3636C (West 1990).

Reeder's claim but that AEIC had not acted in bad faith. The court scheduled a jury trial on the issue of damages for December 19, 1994.

On December 5, 1994, AEIC offered to settle the case for $1 million, which Reeder refused. The jury eventually awarded Reeder $612,000 for her bodily injuries. On December 21, 1994, the court entered judgment on the verdict, as well as granting partial summary judgment in favor of Reeder on the issue of liability and granting summary judgment to AEIC on the issue of bad faith.

Reeder filed post-judgment motions contending that the district court should enter judgment against AEIC for $1,500,000 because $612,000 was wholly inadequate and because the undisputed facts revealed damages of $1,500,000. Reeder also alleged numerous errors by the trial court. On March 24, 1995, the district court denied Reeder's post-judgment motions. This appeal followed.

## Discussion

### I. AEIC's Offer to Settle

Reeder claims that the district court erred in failing to try the case in accordance with Oklahoma public policy. Specifically, Reeder claims that AEIC's offer to settle the suit for $1 million made the sole issue in the case whether the $1 million offer fully compensated her or whether she was entitled to $1.5 million. Reeder applied to the district court to amend the pre-trial order and submit this question to the jury. The district

court denied Reeder's motion, ruling that the offer to settle was inadmissible under Federal Rules of Evidence 408 and 403. Aplt. App. at 73-74, 91. We review de novo both the interpretation of the Federal Rules of Evidence, United States v. Medina-Estrada, 81 F.3d 981, 986 (10th Cir. 1996), and the interpretation of the law and public policy of Oklahoma, Horace Mann Ins. Co. v. Johnson, 953 F.2d 575, 576 (10th Cir. 1991).

Under Oklahoma law, "if the underinsurer does not conduct an investigation, or after investigation, determines that the likely worth of the claim exceeds the liability limits, prompt payment must be offered." Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1112 (Okla. 1991). Reeder claims that there is a distinction between an offer of payment in this context and an offer to settle a lawsuit under Rule 408. Reeder notes that Oklahoma public policy, as announced by the Buzzard case, requires an underinsurer to make an offer of payment, while there is no duty imposed by Rule 408 to make any settlement offer.

Buzzard imposes a duty upon an underinsurer to investigate and evaluate claims and offer payment if the claim so warrants. Id. at 1108-09. In this case, AEIC lived up to its duties as an underinsurer by evaluating Reeder's claim and offering payment of $1 million. Reeder attempts to claim that the $1 million offer was not a settlement offer but an "evaluation" and thus admissible as such, citing Massey v. Farmers Ins. Group, 986 F.2d 1428 (10th Cir.), cert. denied, 508 U.S. 911 (1993), an unpublished Order and Judgment. Besides lacking precedential value, see 10th Cir. R. 36.3, Massey is also

clearly distinguishable. In <u>Massey</u>, an evaluation was admitted into evidence because it was only an evaluation and nothing more, and the court specifically noted that the insurance company had "never furnished, offered, or promised to furnish [the evaluation amount] to settle Plaintiff's claim." <u>Massey</u>, 986 F.2d 1428, 1993 WL at *9. In this case, the evaluation was also the offer and clearly denoted as such; Reeder's attempt to classify it as solely an "evaluation" is directly contrary to the undisputed evidence. Reeder also attempts to claim that the "evaluation" would be admitted for a purpose other than to prove the amount of her claim, but this argument is specious. Reeder's admitted purpose in attempting to introduce the "evaluation" was to determine whether it was adequate compensation for her claim, which is inexorably linked with proving the amount of the claim.

Simply because the offer of payment is made pursuant to AEIC's responsibilities as an underinsurer does not mean that it is not an offer to settle under Rule 408; the two situations are not mutually exclusive. Rule 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish . . . a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

Fed. R. Evid. 408.[3] Although AEIC's settlement offer may also qualify as an evaluation made in light of Oklahoma public policy, the offer falls squarely within the confines of

---

[3]     The amount of Reeder's claim was the only issue in dispute; the parties stipulated as to liability.

Rule 408, and thus the district court properly ruled evidence of the offer inadmissible. Rule 408 does not distinguish between settlement offers made pursuant to a company's statutory or public policy responsibilities and offers made for other reasons. Both types of offers advance the policy behind Rule 408, namely, to promote the out-of-court settlement of claims. Contrary to Reeder's assertion, the fact that an evaluation also serves as a settlement offer in this case in no way forces the insurance company to settle because the underinsurer need only offer payment where its investigation reveals liability on its part; the insurer is not required to make any offer of payment where it has determined that it is not liable.

## II. Stacking

Reeder's single AEIC insurance policy covered three vehicles, and she paid a separate premium for each vehicle. The uninsured motorist liability limit under the policy was $500,000. Reeder contends that the district court erred in aggregating, or "stacking," the three coverages and instead should have considered each policy separately and allowed her to recover against each "policy," resulting in a total recovery of $1.5 million. This is a question of law which we review de novo, applying state law. See Benns v. Continental Casualty Co., 982 F.2d 461, 462 (10th Cir. 1993).

In Richardson v. Allstate Ins. Co., 619 P.2d 594 (Okla. 1980), the Oklahoma Supreme Court squarely addressed this stacking issue. In Richardson, the insurance

- 6 -

company issued Richardson a single policy covering three vehicles with an uninsured motorist limit of $25,000 per person or $50,000 per accident, and Richardson paid a separate premium for each of the vehicles. The Oklahoma Supreme Court held:

> [W]here an insured had paid three premiums for uninsured motorist insurance contained in a single policy covering three vehicles, the extent of uninsured motorist coverage is the aggregate limit of coverages corresponding to the number of separate uninsured motorist insurance premiums paid by the insured. Under the record presented, the coverage of $25,000.00 for each person injured in an accident, not to exceed $50,000.00 in any one accident, will be "stacked" or aggregated to provide limits of $75,000.00 and $150,000.00 respectively.

Id. at 598; cf. Aetna Casualty and Surety Co. v. Craig, 771 P.2d 212, 213-14 (Okla. 1989) (Class 1 insured may stack uninsured motorist coverage on a fleet of commercial vehicles covered by a single insurance policy).

Despite this direct Oklahoma Supreme Court authority on point, Reeder argues against stacking and urges that the policy should be "collateralized," attempting to support this theory by relying on a line of Oklahoma cases which have held that uninsured motorist coverage cannot be offset by workers' compensation benefits. See Barfield v. Barfield, 742 P.2d 1107, 1112-13 (Okla. 1987); Chambers v. Walker, 653 P.2d 931, 934-36 (Okla. 1982). These cases reason that uninsured motorist coverage is separate from workers' compensation protection, and thus the two may co-exist. Barfield, 742 P.2d at 1112. However, in this case we are not faced with an attempt to offset Reeder's uninsured motorist judgment with another type of insurance payment; rather Reeder is attempting to collect three times on the same uninsured motorist policy. This is clearly

not allowed under Oklahoma law. We reject, as we must, Reeder's contention that the policy limits on each vehicle are independant collateral sources.

The jury determined Reeder's damages to be $612,000, but Reeder is now attempting to collect $1.5 million for these injuries. As a matter of equity and fairness, we find Reeder's position untenable. The fact that Reeder paid separate premiums for the three vehicles covered under her single policy allows her to stack the policies and recover the full $612,000 as opposed to only the $500,000 policy limit, but the separate premiums do not create a collateral source situation.

### III. Bad Faith

After AEIC filed suit for declaratory judgment, Reeder counterclaimed alleging bad faith on the part of AEIC for failing to investigate, evaluate and pay her claim within 90 days after it was filed. The district court determined that the 90-day time limit did not apply to uninsured motorist insurance carriers and entered summary judgment in favor of AEIC on the issue. Reeder subsequently moved to amend or vacate this judgment and for leave to file an amended counterclaim for bad faith, again on the basis of AEIC's "delay." The district court denied these motions. Following the trial, Reeder raised these same issues in another motion, which the district court again denied. We review the district court's decision to deny leave to file an amended complaint only for abuse of discretion. Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1274 (10th Cir. 1989); Foman v. Davis,

371 U.S. 178, 182 (1962).

"[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, leave need not be granted where the amendment would be futile, as in this case. The district court explained its rationale for denying leave in its October 20, 1994 Order, to which it referred in its March 24, 1995 Order denying Reeder's second motion for leave. Aplt. App. at 71; Aplee. Supp. App. at 245-46 (Order filed October 20, 1994). The district court determined that AEIC's coverage defense was "legitimate" and therefore not in bad faith, stating:

> The Plaintiff [AEIC] had the right to timely litigate the issue of untimely notice of the insured (approximately four years after the subject accident) as it impacted Plaintiff's contractual right of subrogation against the tort-feasor. While the ruling on that issue was adverse to Plaintiff, it still had the right to in good faith litigate same. The Plaintiff also has the right to litigate disputed elements of damages claimed such as pain and suffering and permanent disability.

Aplee. Supp. App. at 245 (Order filed October 20, 1994). The district court properly explained the basis for its denial of Reeder's motion for leave to amend. We find the district court's reasoning persuasive, and even if we did not, the district court's thoroughly reasoned explanation would not constitute an abuse of discretion.

Reeder contends that her bad faith claim is predicated on events that occurred after the filing of her initial counterclaim and the district court's judgments should be correspondingly altered to reflect this. Specifically, Reeder claims that AEIC acted in bad

faith by failing to promptly investigate and evaluate her claim, or in the alternative, that the evaluation was untimely. We find these arguments disingenuous.

AEIC's liability was not established until the district court's Order filed August 26, 1994. Once its liability was established, AEIC promptly took steps to investigate and evaluate Reeder's claim, culminating in the $1 million offer on December 5, 1994. This offer constituted an evaluation and assignment of a dollar value to Reeder's claim, as well as an offer to settle the lawsuit. We have held that the two are not mutually exclusive. Further, we find that this evaluation was timely as a matter of law; the offer was made just over three months from the district court's determination of liability. The fact that the evaluation was completed twenty-one months after Reeder's claim was initially filed is irrelevant because AEIC's liability was in serious dispute until August 26, 1994. Thus, AEIC's "delay" was hardly a delay and certainly not in bad faith.

While we sympathize with Ms. Reeder's injuries, this is a court of law, not of sympathy. It is unfortunate that Ms. Reeder and her attorney failed to have the foresight to accept AEIC's settlement offer, but they elected to take their chances with a jury and must abide by the jury's decision.

AFFIRMED.