**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-016

Filing Date: December 20, 2011

Docket No. 30,417

FINANCIAL INDEMNITY COMPANY,

     Plaintiff-Appellee,

v.

LEO CORDOBA,

     Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
James T. Martin, District Judge

Miller Stratvert P.A.
Charlotte Lamont
Matthew S. Rappapport
Albuquerque, NM

for Appellee

Kenneth G. Egan
Las Cruces, NM

L. Helen Bennett
Albuquerque, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}** In this workers' compensation case, Defendant Leo Cordoba appeals the district court's dismissal of his counterclaim against Plaintiff Financial Indemnity Company (FIC) and denial of his motion for reconsideration or, in the alternative, for leave to amend the counterclaim. We hold that the district court misconstrued and misapplied Rules 11-408 and

1

1-012(B)(6) NMRA. Rule 11-408 is not designed or intended to preclude admission of evidence of settlement negotiations in an insurance coverage dispute when the settlement negotiations are offered not to prove coverage or amount, but are offered to prove wrongful conduct such as bad faith or unfair practices during the claim investigation and upon denial of the claim. Here, insofar as the averments of settlement negotiations related to claims of wrongful conduct, dismissal was inappropriate.

**BACKGROUND**

{2}     Cordoba was injured in an accident that occurred when he was a passenger in a company-owned truck driven by his co-worker. His medical costs were approximately $35,000. Workers' compensation, which was the exclusive remedy available to Cordoba through his employer, paid his lost wages and medical bills.

{3}     Cordoba sought payment from his own insurer, FIC, under the uninsured/underinsured motorist coverage of his policy and requested payment of $25,000, the limit for bodily injury. Following a failed attempt at settlement negotiations, FIC filed a declaratory judgment action as to whether the policy covered Cordoba's claim and, if so, in what amount. FIC's position was that the policy did not apply because Cordoba could not establish that his injuries were caused by an uninsured or underinsured motorist and also that, in accordance with the policy, any amount payable should be reduced by any payment made by workers' compensation.

{4}     Cordoba filed a counterclaim alleging that FIC had breached its contract, violated New Mexico law, and acted in bad faith. As a factual basis for his counterclaim, Cordoba averred, in part, that FIC had acknowledged coverage of Cordoba's claim by way of two settlement offers. Cordoba further averred that after he demanded the policy limit, FIC made two counteroffers of $8,000 and $10,000 respectively, and that FIC's rationale for offering these amounts was that it was entitled to offset the amount Cordoba had already received from workers' compensation. Cordoba also averred that, in attempting to offset the workers' compensation payments, FIC did not follow New Mexico law, and that when FIC "learned of its error" in this regard, it filed the declaratory judgment action as a "tactic" to cause further delay. FIC moved under Rule 1-012(B)(6) to dismiss Cordoba's counterclaim for failure to state a claim upon which relief could be granted. FIC broadly asserted that the counterclaim cited the alleged settlement negotiations between the parties in order to establish liability and was, therefore, attempting to do what was expressly prohibited by Rule 11-408.

{5}     In a hearing on FIC's motion to dismiss, Cordoba contended that his reference to the settlement negotiations, rather than being used to show FIC's acknowledgment of coverage, was intended only to show that, because full coverage was otherwise indisputable, FIC acted wrongfully in attempting to pay less than the policy limits. Unpersuaded by Cordoba's argument, the district court granted FIC's Rule 1-012(B)(6) motion. The district court reasoned that Cordoba's counterclaim contravened Rule 11-408 insofar as it was drafted to

2

say that, in making settlement offers, FIC admitted that Cordoba's claim was covered. The court noted that "[t]he first step is whether . . . [FIC] even ha[d] a responsibility of coverage . . . which [was] the subject of the declaratory judgment action" and that, by using FIC's offer of settlement to establish that FIC had a duty of coverage, Cordoba was using the settlement offer to "make step one of [his] claim." The dismissal was without prejudice based on Cordoba's request that he be permitted to proceed with discovery already requested, "in case new information is learned that would support [his counterclaim]."

{6}     Cordoba filed a motion to reconsider or, in the alternative, for leave to amend his counterclaim. His proposed amended counterclaim restated the averments of the settlement negotiations but, in place of the averment that FIC had acknowledged coverage for Cordoba by making the settlement offers, the amended counterclaim averred that "FIC took the erroneous position at all relevant times . . . that they were entitled to [offset] workers['] compensation benefits paid to Cordoba." Simultaneously, he filed a motion to compel discovery of information that may have been relevant to an amended counterclaim.

{7}     With Cordoba's motion to reconsider or to allow him to amend his counterclaim still pending, the district court heard FIC's motion for summary judgment and Cordoba's motion to compel discovery. The court denied FIC's motion for summary judgment, ruling that Cordoba was entitled to seek recovery under his uninsured/underinsured motorist coverage, and the court granted Cordoba's motion to compel discovery. The district court declined to reconsider its prior Rule 1-012(B)(6) dismissal of the original counterclaim, but it agreed that if Cordoba was able to discover sufficient evidence to support his counterclaim, the court would reconsider its ruling.

{8}     Several weeks later, FIC filed a motion to dismiss, with prejudice, Cordoba's motion to amend his counterclaim. In its motion, FIC asserted that, after the court's ruling on its motion for summary judgment, FIC paid Cordoba the policy limits and that, therefore, the only outstanding issue in the case was Cordoba's request to amend his counterclaim. In that regard, FIC asserted that it had produced sufficient discovery for Cordoba to determine whether he had an alternative basis for his counterclaim. Thereafter, Cordoba filed a second motion to compel discovery in which he asserted that his attempts "to schedule depositions with various individuals of [FIC]" had all been refused.

{9}     At a hearing on FIC's motion to dismiss Cordoba's motion to amend his counterclaim and on Cordoba's second motion to compel, the court ruled that because the declaratory judgment action was resolved and the policy limits were paid, there remained "no pending claims." The court entered a final judgment by which it granted FIC's motion to dismiss with prejudice and denied as moot all pending motions.

{10}    On appeal, Cordoba contends that the district court erred in its application of Rule 11-408 and in dismissing his counterclaim on Rule 1-012(B)(6) grounds and also erred in not permitting him to proceed on that counterclaim or on his proposed amended counterclaim.

3

**DISCUSSION**

**{11}** "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 2, 134 N.M. 43, 73 P.3d 181 (internal quotation marks and citation omitted). "A district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) is reviewed de novo." *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917 (internal quotation marks and citation omitted). Dismissal under Rule 1-012(B)(6) is appropriate only if the non-moving party is "not entitled to recover under any theory of the facts alleged in their complaint." *Delfino*, 2011-NMSC-015, ¶ 12 (internal quotation marks and citation omitted). Moreover, on review, "we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Id.* ¶ 9 (internal quotation marks and citation omitted). Whether to admit evidence of settlement offers for a purpose other than proving liability is within the discretion of the district court. *Fahrbach v. Diamond Shamrock, Inc.*, 1996-NMSC-063, 122 N.M. 543, 547-48, 928 P.2d 269, 273-74. "[W]e may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Clark v. Sims*, 2009-NMCA-118, ¶ 20, 147 N.M. 252, 219 P.3d 20 (internal quotation marks and citation omitted).

**{12}** FIC contends that Rule 11-408 strictly prohibited Cordoba's "impermissible use of settlement negotiations" to show that FIC acknowledged coverage or admitted liability to Cordoba for benefits. *See* Rule 11-408 (stating that "[e]vidence of . . . offering or promising to furnish . . . a valuable consideration in compromising or attempting to compromise a claim . . . is not admissible to prove liability for . . . the claim or its amount"). Rule 11-408 does not exclude evidence of settlement negotiations, however, if the evidence is offered for "another purpose[.]" *See Jesko v. Stauffer Chem. Co.*, 89 N.M. 786, 789, 558 P.2d 55, 58 (Ct. App. 1976) (stating that Rule 11-408 excludes evidence when its purpose is "proving the validity or invalidity of the claim or its amount, [however] an offer for another purpose is not within the rule" (internal quotation marks and citation omitted)). Cordoba's argument regarding evidence of the settlement negotiations is that they were not to show that FIC acknowledged coverage or admitted liability for benefits. Before the court ruled that Cordoba's claim was covered under the policy, the settlement negotiations were offered based on a theory that coverage was otherwise indisputable and that FIC engaged in bad faith and other wrongful conduct in an attempt to delay payment or to pay less than it was required by law to pay. After the court ruled that Cordoba's claim was covered under the FIC policy, the settlement negotiations indisputably could no longer have been offered to prove that FIC acknowledged coverage or admitted liability for benefits. At all times during the pendency of this case below, evidence of FIC's actions during settlement negotiations, taken as true, was relevant to prove Cordoba's derivative bad faith claims.

**{13}** Cordoba relies on *ABM Industries, Inc. v. Zurich American Insurance Co.*, 237 F.R.D. 225, 228 (N.D. Cal. 2006) (order), for the proposition that he was entitled to reference FIC's conduct and statements made during settlement negotiations to allege that

4

FIC's conduct and actions in adjusting Cordoba's claim for coverage were undertaken in bad faith and in violation of New Mexico law governing insurance practices. *See* Rule 11-408 comm. cmt. ("This rule was changed to conform to federal rule."); *see also State v. Lopez*, 1997-NMCA-075, ¶ 10, 123 N.M. 599, 943 P.2d 1052 (stating that, where the state and federal rules are similar, federal case law is instructive in interpreting the state rule).

**{14}**    *ABM Industries* involved a question of whether insureds could amend their complaint to add facts concerning settlement offers, mediation efforts, and allegations of bad faith against the insurers in an insurance coverage dispute. 237 F.R.D. at 226. The insurers opposed the amendment request on the ground that evidence regarding settlement and mediation was barred by Federal Rule of Evidence 408 and the amendments were therefore futile. *ABM Indus.*, 237 F.R.D. at 228. The insureds argued that Rule 408 was inapplicable because evidence of mediation and settlement negotiations was not being offered to prove liability in the underlying action, but was being used for "another purpose" which was to show that the insurers had  unreasonably denied coverage. *ABM Indus.*, 237 F.R.D. at 228. The court agreed with the insureds' position and held that the insureds' allegations that the amount of the settlement in the underlying action triggered the insurance policy with one of the insurers, if taken as true, raised a question of whether the insurer's denial of coverage was reasonable. *Id.* at 229. The court explained that the amendment would be held futile "only if no set of facts could be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *Id.* at 227 (internal quotation marks and citation omitted). Thus, in *ABM Industries*, the court made a distinction that applies to this case, namely, that there is a difference between using evidence of settlement to prove the existence or amount of coverage and using that evidence in a separate claim or action to prove bad faith or other wrong doing.

**{15}**    Here, as in *ABM Industries*, taking as true Cordoba's allegations that "FIC did not follow New Mexico law in its interpretation of the insurance policy"  and that his damages were "clearly covered under the Cordoba/FIC contract," FIC's conduct in denying policy limits either prior to or during settlement negotiations raised a legal issue separate from the question of liability for the uninsured/ underinsured motorist benefits. *See* 237 F.R.D. at 229; *see also Delfino*, 2011-NMSC-015, ¶ 9 (stating that on review for propriety of dismissal for failure to state a claim, the appellate courts accept as true all well-pleaded facts in a complaint). Cordoba  referenced the settlement negotiations in his counterclaim, among other reasons, to demonstrate that FIC had no legitimate or arguable basis on which to refuse to pay the policy limits and that FIC wrongfully attempted to reduce that obligation. Accordingly, dismissal of the counterclaim under Rule 1-012(B)(6) was improper. Even more so, the court erred in holding fast to the dismissal and not permitting Cordoba to file his amended counterclaim. It is indisputable that, once the court ruled in Cordoba's favor on coverage, the settlement negotiation averments Cordoba sought to plead in his proposed amended counterclaim unambiguously related only to FIC's bad faith or other wrongful conduct. As such, reaffirming the Rule 1-012(B)(6) dismissal based on Rule 11-408 was improper. *See* Rule 1-015(A) NMRA (stating that after a responsive pleading has been served, a "party may amend his pleading. . . by leave of [the] court . . . and leave shall be

5

freely given when justice so requires"); *Amica Mut. Ins. Co. v. McRostie*, 2006-NMCA-046, ¶ 20, 139 N.M. 486, 134 P.3d 773 (recognizing that the clear policy behind Rule 1-015 is that amendments should be freely granted); *Lovato v. Crawford & Co.*, 2003-NMCA-088, ¶ 6, 134 N.M. 108, 73 P.3d 246 ("Amendments to the pleadings are favored and should be liberally permitted as justice requires.").

**{16}** Moreover, Cordoba's reference in his counterclaim to any facts that may have eventually been ruled inadmissible in evidence did not provide a proper basis for dismissal of his counterclaim under Rule 1-012(B)(6). *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (stating that "[t]he fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal pursuant to Rule 12(b)(6)"). Thus, while the district court and FIC noted that in his counterclaim Cordoba alleged that "FIC, by way of two separate financial settlement offers, [acknowledged] coverage to Cordoba[,]" the presence of this in the averments was not a basis for dismissal of Cordoba's counterclaim because in significant part, if not fully, reference to FIC's acknowledgment of coverage was intended not as proof of coverage liability, but rather as proof of liability for bad faith.

**{17}** Additionally, the fact that the objectionable reference was made while the declaratory judgment was pending was not a proper basis for dismissal. Any reference to FIC's acknowledgment of liability by way of settlement offers would undeniably have been improper had it been included in Cordoba's response to FIC's declaratory judgment action; however, that is not what occurred here. Rather, the averment appeared only in Cordoba's counterclaim which, in addition to being pertinent to legal issues other than liability for coverage, was compulsory and, therefore, could not have been raised except within a counterclaim. *See* Rule 1-013(A) NMRA (stating that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"); *Bentz v. Peterson*, 107 N.M. 597, 601, 762 P.2d 259, 263 (Ct. App. 1988) (stating that "[f]ailure to plead a compulsory counterclaim bars a later action on that claim"). Therefore, to the extent that FIC's acknowledgment of liability provided proof of Cordoba's counterclaim allegations, its inclusion in the counterclaim was proper notwithstanding the pendency of the declaratory judgment action.

**{18}** We conclude that the district court abused its discretion by misinterpreting and misapplying Rule 11-408 and erroneously dismissed Cordoba's counterclaim under Rule 1-012(B)(6). *See Clark*, 2009-NMCA-118, ¶ 20 (stating that a district court abuses its discretion by making a decision based on misapprehension of the law).

**{19}** On a final note, we distinguish *Reeder v. American Economy Insurance Co.*, 88 F.3d 892 (10th Cir. 1996), upon which the district court relied in making its determination and upon which FIC relies on appeal. In *Reeder*, the insurer filed a declaratory judgment action to determine whether the insured was entitled to recover under the uninsured motorist coverage, and the insured counterclaimed for compensatory damages and for damages in bad

faith. *Id.* at 893. On the coverage issue, the insured sought $1.5 million, which represented three insured vehicles each with uninsured motorist coverage of $500,000. *Id.* at 893, 895.

**{20}** Both parties moved for summary judgment. *Id.* at 893. The court ruled that the insured's claim was covered. *Id.* The court also ruled that the insurer had not acted in bad faith. *Id.* The court set trial on the issue of compensatory damages only. *Id.* Just before trial, the insurer offered $1 million in settlement. *Id.* The jury awarded $612,000 for the insured's bodily injuries. *Id.* The court (1) entered judgment on that verdict, (2) granted partial summary judgment in favor of the insured on liability, and (3) granted summary judgment in favor of the insurer on the bad faith claim. *Id.*

**{21}** On appeal, the insured claimed that the court erred in failing to proceed to jury trial on the issue of whether the $1 million offer fully compensated her or whether she was entitled to $1.5 million. *Id.* at 894. The apparent underlying rationale for this request was the insurer's duty under state law that if the insurer does not conduct an investigation or, after investigation, determines that the likely worth of the claim exceeds the liability limits, "prompt payment [of the limits] must be offered." *Id.* (internal quotation marks and citation omitted).

**{22}** Apparently, based on *Buzzard v. Farmers Insurance Co.*, 824 P.2d 1105, 1112 (Okla. 1991), which imposed a duty on the insurer to investigate and evaluate claims and offer payment if the claim so warrants, the insured wanted to show that the $1 million offered was the insurer's "evaluation" apparently for the purpose of having a jury determine whether it was adequate compensation for her claim, and this, presumably in the insured's mind, was linked to proving the insurer's bad faith in failing in its state law duty to timely and promptly investigate and pay her claim. *Reeder*, 88 F.3d at 894. The court in *Reeder* held that the "evaluation" was a settlement offer and that it was "inexorably linked with proving the amount of the [coverage] claim." *Id.* Here, unlike *Reeder*, the references to settlement negotiations were not linked with proving the amount of the claim. Rather, as we have already indicated, they were for "another purpose" allowable under Rule 11-408. *Reeder* is also distinguishable insofar as it was not a case in which the court dismissed for failure to state a claim based on Rule 12(b)(6). And finally, *Reeder* is distinguishable because the *Reeder* court, unlike the district court in the present case, ruled on the merits of the insured's bad faith claim. Owing to its inapplicability to issues in this case, *Reeder* does not support FIC's position.

**CONCLUSION**

**{23}** We reverse the district court's dismissal under Rule 1-012(B)(6) and remand for further proceedings consistent with this Opinion.

**{24}** **IT IS SO ORDERED.**

**JONATHAN B. SUTIN, Judge**

WE CONCUR:

_____

**JAMES J. WECHSLER, Judge**

_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for _Financial Indemnity Co. v. Cordoba_, No. 30,417**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-RM | Remand |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-BF | Bad Faith |
| CP-CM | Counterclaim |
| CP-MD | Motion to Dismiss |
| CP-RE | Rule 60(B) Motion |
| CP-SE | Settlement Agreement |
| CP-SJ | Summary Judgment |
| | |
| **IN** | **INSURANCE** |
| IN-BF | Bad Faith |
| IN-MV | Motor Vehicle Insurance |
| IN-PC | Primary, Secondary or Other Coverage |
| IN-SE | Settlement |
| IN-UM | Uninsured or Underinsured Motorist |
| | |
| **WC** | **WORKERS COMPENSATION** |
| WC-WG | Workers' Compensation, General |