**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 17, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL PORTER,

     Plaintiff - Appellant,

v.

FARMERS INSURANCE COMPANY, INC.,

     Defendant - Appellee.

No. 12-5025
(D.C. No. 4:10-CV-00116-GKF-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **HOLMES**, Circuit Judges.

---

Plaintiff-Appellant, Michael Porter, appeals from the district court's grant of summary judgment in favor of Farmers Insurance Company, Inc. ("Farmers") on his breach of contract and bad faith claims. Exercising its diversity jurisdiction pursuant to 28 U.S.C. § 1332, the district court held that Defendant-Appellee, Farmers, was entitled to judgment as a matter of law on both claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

The parties are familiar with the facts and we restate them only to frame the issues on appeal. In late January 2007, Mr. Porter contacted his Farmers agent to obtain a policy on his Volkswagen ("VW"). Aplt. App. 1047. At the time, he had an existing policy on a Ford truck, for which he had signed an Uninsured Motorist ("UM") coverage waiver. Id. Mr. Porter claims he intended to add the VW as an additional vehicle; Farmers' agent maintains that Mr. Porter asked to substitute the VW for the Ford. Id. at 99, 115. Under Oklahoma law, insurers are required to obtain a written waiver of UM coverage when an additional vehicle is added to a policy. Id. at 108. However, no UM waiver is required when an insured merely substitutes one vehicle for another. Id. Mr. Porter never signed a UM waiver for the VW. Id. at 214. Farmers has no record of a policy listing the VW, nor did Mr. Porter pay premiums on any such policy. Id. at 1049. However, Mr. Porter did receive an insurance verification form, listing a policy number for his VW. Id. at 673, 675.

On April 22, 2007, Mr. Porter was involved in an accident while driving his VW. Id. at 251, 254. On April 24, 2007, Trooper Brian Rose interviewed Mr. Porter and composed a collision report. Id. at 257–58. His report indicated that the collision was a single vehicle incident. Id. at 251–54. The only contributing factor listed was "Unsafe Speed . . . On Curve/ Turn." Id. at 253.

In early 2008, Mr. Porter called his insurance agency to report the accident

but did not identify himself.  <u>Id.</u> at 649, 667–69.  The two agents who received the calls did not know the caller's identity.  <u>Id.</u> at 649, 668–69.  Mr. Porter called again in 2009.  <u>Id.</u> at 667–68.  This time, he identified himself but said nothing about his accident or injuries.  <u>Id.</u> at 669–70.  Mr. Porter requested a copy of the coverage policy for his VW.  <u>Id.</u> at 669.

On August 4, 2009, Mr. Porter's attorney filed a claim with Farmers regarding "personal injuries [Mr. Porter] sustained as a result of a car collision with an uninsured motorist on or about April 22, 2007."  <u>Id.</u> at 103.  In response, Farmers explained it had no record of UM coverage for Mr. Porter, and enclosed a copy of the UM waiver he had signed with his policy on the Ford.  <u>Id.</u> at 105–06.  Farmers' adjuster called its agent to inquire about Mr. Porter's 2007 policy change.  <u>Id.</u> at 99.  According to the agent, Mr. Porter had asked to substitute the VW for his truck; he did not seek an additional policy.  <u>Id.</u>

On August 21, 2009, Farmers' adjuster interviewed Mr. Porter.  <u>Id.</u> at 110.  Mr. Porter stated that he had intended to add the VW as an *additional* vehicle.  <u>Id.</u> at 115.  When asked to describe the April 2007 accident,  Mr. Porter replied, "I really can't tell you, I don't know."  <u>Id.</u> at 117.

On August 24, 2009, Farmers retained outside legal counsel.  <u>Id.</u> at 200–01.  On September 14, 2009, Farmers' counsel interviewed Trooper Rose, who stated that Mr. Porter had been unable to provide details of the accident.  <u>Id.</u> at 784.  He also said that in his opinion, the accident involved one vehicle, though he could

not be "100 percent" sure. Id. at 788–89.

On November 11, 2009, Mr. Porter gave an examination under oath ("EUO"). Id. at 156. Under its policy, Farmers had the right to demand an EUO. Id. at 74. It was during this EUO that Mr. Porter first recounted and described how another vehicle had caused his accident. Id. at 100.

On December 18, 2009, Farmers' counsel issued an opinion recommending that Farmers extend UM coverage. Id. at 790–94. On December 24, 2009, Farmers offered to provide coverage up to the $25,000 policy limit. Id. at 100–01. Mr. Porter's attorney requested that payment be withheld until the amounts of any Medicare or child support liens were determined. Id. at 101, 753, 779. Farmers maintains that it was always willing to issue a single check with both Mr. Porter and Medicare listed as payee. Id. at 754. Mr. Porter's attorney admits that as of April 2011, she was postponing issuance of the check until the Medicare lien was resolved. Id. at 812.

In a July 15, 2011 letter, Medicare formally notified Mr. Porter that it did not have a subrogation claim relating to the "October 01, 2009" incident. Id. at 843. Upon receiving a copy of this letter, Farmers notified Mr. Porter's attorney that the incident date was incorrect and requested a new letter. Id. at 849.

During a September 14, 2011 settlement conference—while the parties were still awaiting a response from Medicare—Mr. Porter's attorney asked Farmers to issue payment. Id. at 818, 898. On October 20, 2011, Farmers issued

a check, listing both Mr. Porter and Medicare as the payee. Id. at 864–65. On October 31, 2011, Mr. Porter's attorney, counsel for Farmers, and Medicare held a telephone conference. Id. at 899. During the call, Medicare provided verbal assurance that it was not asserting a lien. Id. Farmers proceeded to issue a new check on November 4, 2011, naming Mr. Porter as the sole payee. Id. at 865–66.

On January 27, 2012, the district court granted Farmers' motion for summary judgment. Porter v. Farmers Ins. Co., Inc., No. 10-CV-116-GKF-PJC, 2012 WL 256014 (N.D. Okla. Jan. 27, 2012). The court held that to the extent UM coverage was imputed by law, Farmers' payment of the statutory limit entitled it to summary judgment on the breach of contract claim. See id. at *15. Denying Mr. Porter's bad faith claim, the court held that Farmers' investigation was adequate and its delayed payment was reasonable. See id. at *17–20.

On appeal, Mr. Porter argues that the district court erred in: 1) failing to consider the evidence in the light most favorable to the nonmoving party; 2) holding that Farmers' payment of the statutory limit entitled it to summary judgment on the contract claim; 3) concluding that Farmers had not acted unreasonably in failing to report Mr. Porter's initial calls; 4) determining that Farmers' investigation was reasonable; and 5) holding that the delay in payment was reasonable under the circumstances. See Aplt. Open. Br. 17–33.

Discussion

In this diversity case, our review is de novo and we apply the same standard as the district court. Fowler v. United States, 647 F.3d 1232, 1237 (10th Cir. 2011). Summary judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In deciding whether the moving party is entitled to judgment as a matter of law, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. Fowler, 647 F.3d at 1237.

## A.    Breach of Contract Claim

Viewing the evidence in the light most favorable to Mr. Porter, we accept as true his claim that he intended to add the VW to his insurance policy. Consequently, because Farmers failed to obtain a UM waiver, UM coverage was implied as a matter of law. "Where an insurer fails to offer in writing or obtain a written rejection of UM coverage such that UM coverage is imputed to an insured's policy as a matter of law . . . the mandate of § 3636 is satisfied by imputation of the minimum limits of UM coverage required by statute." May v. Nat'l Union Fire Ins. Co., 918 P.2d 43, 48 (Okla. 1996) (citing Okla. Stat. tit. 36 § 3636). However, Mr. Porter's breach of contract claim fails for two reasons.

First, Mr. Porter has not offered evidence from which a reasonable jury could find that Farmers breached its contractual duties—express or implied. Farmers only has a duty to pay UM coverage where its insured suffers damages

- 6 -

due to an uninsured motorist or a hit-and-run.  In the event of an accident, "notice must be given to [Farmers] promptly" and must include "the time, place and circumstances of the accident."  Aplt. App. 73.  The first time Mr. Porter gave notice of his UM claim was August 4, 2009—over two years after the accident.[1] Farmers promptly investigated this allegation but found no evidence of a second driver.  During his August 2009 interview, Mr. Porter made no indication that his crash involved another driver.  It was not until his November 2009 EUO that Mr. Porter first mentioned the other vehicle.  Less than seven weeks later, Farmers offered full payment of the UM coverage.

Farmers' insurance policy also provides that, with respect to UM coverage, "[d]etermination as to whether an insured person is legally entitled to recover damages or the amount of damages shall be made by agreement between the insured person and [Farmers].  If no agreement is reached, the decision will be made by arbitration."  Aplt. App. 76.  Mr. Porter did not dispute the extent or amount of coverage offered; resort to arbitration was therefore unnecessary. Thus, Farmers complied with its contractual obligations—both those expressly undertaken and those imposed by Oklahoma law.  That Farmers did not issue

---

[1] Mr. Porter argues that Mr. Lehrman knew he was the "anonymous" caller in 2008.  See Aplt. Open. Br. 25 (citing Aplt. App. 973–74).  We are unable to find any support for this assertion.  The fact that Mr. Lehrman now refers to the caller as "Mr. Porter" does not contravene his testimony that, at the time he received the calls, he did not know the caller's identity.  Id. at 970.  Mr. Porter's assertion as to what Mr. Lehrman knew is not significantly probative evidence.

payment until November 4, 2011 was not due to any fault of its own, nor any contractual breach. Moreover, Mr. Porter does not point to any contractual or statutory provision that this delay violated given the circumstances.

Second, Mr. Porter failed to offer evidence of any damages resulting from the alleged breach. See Digital Design Grp., Inc. v. Info. Builders, Inc., 24 P.3d 834, 843 (Okla. 2001). It is undisputed that Farmers tendered the policy limit of $25,000. However, Mr. Porter claims he is also entitled to prejudgment interest.

An insured may be entitled to prejudgment interest on a UM claim, running from the date liability is fixed. See Nunn v. Stewart, 756 P.2d 6, 6–7 (Okla. 1988) (citing Okla. Stat. tit. 23 § 22). Here, the earliest date at which Farmers can be said to have admitted liability is December 24, 2009, when it offered to tender full UM coverage. See id. at 7. It was *Mr. Porter* who initially requested a delay in payment, and the later delays were not the fault of Farmers. Accordingly, it would be improper to hold Farmers liable for delays beyond its control. See Parker v. O'Rion Indus., Inc., 769 F.2d 647, 650 (10th Cir. 1985) (denying prejudgment interest under Oklahoma law for the period of delay caused by plaintiff); see also Dyer v. Nat'l Steam Navigation Co., 118 U.S. 507, 520 (1886) (denying interest where claimants caused the delay). In short, Mr. Porter has not shown he is entitled to any damages. Therefore, the district court properly granted summary judgment on his breach of contract claim.

B.     Bad Faith Tort Claim

Under Oklahoma law, an insurer has an implied duty to act in good faith and deal fairly with its insured. Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1093 (Okla. 2005). Violation of this duty gives rise to an action in tort. See Bannister v. State Farm Mut. Auto. Ins. Co., 692 F.3d 1117, 1123 n.8 (10th Cir. 2012). The elements of a bad faith claim are: 1) the insured was entitled to coverage under the policy; 2) the insurer had no reasonable basis for delaying payment; 3) the insurer violated its duty of good faith and fair dealing; and 4) the insurer's violation directly caused the insured's injury. Ball v. Wilshire Ins. Co., 221 P.3d 717, 724 (Okla. 2009). The party claiming bad faith has the burden of proof, McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 587 (Okla. 1981), and must make a "clear showing" that the insurer acted unreasonably and in bad faith, see Christian v. Am. Home Assurance Co., 577 P.2d 899, 905 (Okla. 1977).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted). "The mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle a litigant to submit the issue to a jury," Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993), nor is the "mere existence of a scintilla of evidence in support of the plaintiff's position" sufficient, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

- 9 -

In the context of a bad faith claim, "[u]ntil the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct . . . the legal gate to submission of the issue to the jury remains closed." Oulds, 6 F.3d at 1437.

We assume, for purposes of summary judgment, that Mr. Porter was entitled to coverage under the policy. Thus, the crux of Mr. Porter's bad faith claims turns on two questions: 1) whether Farmers unreasonably withheld payment; and 2) whether Farmers breached its duty of good faith and fair dealing by failing to adequately investigate his claim. We address each issue in turn.

### 1. The Delay in Payment

Mr. Porter argues that Farmers unreasonably withheld payment. The critical question is whether, at the time performance was requested, the insurer had a good faith belief that it was justified in withholding or delaying payment. Buzzard v. McDanel, 736 P.2d 157, 159 (Okla. 1987). "If there is a legitimate dispute concerning coverage . . . withholding or delaying payment is not unreasonable . . . ." Ball, 221 P.3d at 725.

First, we conclude that Farmers reasonably delayed payment while it investigated whether Mr. Porter was entitled to UM coverage. Mr. Porter first requested payment on August 4, 2009, when his lawyer gave notice that Mr. Porter had been involved in a collision with an uninsured motorist. At that point, there was a legitimate dispute regarding whether Mr. Porter had substituted or

- 10 -

added the VW to his policy. This issue required resolution, as only the latter scenario could trigger Farmers' duty to provide UM coverage. As such, Farmers was entitled to credit its agent's version of events and investigate the discrepancy accordingly. See Oulds, 6 F.3d at 1439–40.

Moreover, there was a legitimate dispute regarding whether the accident involved an uninsured motorist. When Mr. Porter first brought his claim, there was simply no evidence of a second driver. Oklahoma's UM statute places on the insured "the burden of proving the uninsured status of the tortfeasor's motor vehicle." Gates v. Eller, 22 P.3d 1215, 1218 (Okla. 2001). Thus, Farmers could have resisted until Mr. Porter showed either the tortfeasor's uninsured status or demonstrated that his efforts to identify the tortfeasor were futile. See Brown v. United Servs. Auto. Ass'n, 684 P.2d 1195, 1201–02 (Okla. 1984).

Second, we reject Mr. Porter's claim that Farmers' decision to seek counsel caused an unreasonable delay. Mr. Porter relies on the opinion of his expert, Ms. Luther, for support. Ms. Luther contends that the retention of counsel and subsequent EUO were unnecessary because Farmers already had the information necessary to decide Mr. Porter's claim. But this conclusion is simply contrary to the facts viewed against a backdrop of the applicable law, and we need not accept it as true. See Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001). The insurance contract entitled Farmers to demand an EUO. More important, the EUO was critical in this situation—before it, Farmers had no evidence of a second

driver. Thus, Farmers reasonably sought to discover more facts through the EUO. We likewise find no evidence of bad faith underlying Farmers' decision to seek legal guidance. See Beers v. Hillory, 241 P.3d 285, 292 (Okla. Civ. App. 2010) (concluding that the defendant "did not act in bad faith in seeking legal advice before offering the UM policy limit").

Third, we agree that Farmers' delay in payment after its coverage offer was reasonable under Oklahoma law. Shortly after its counsel issued a coverage opinion, Farmers offered full UM coverage. See Reeder v. Am. Econ. Ins. Co., 88 F.3d 892, 896 (10th Cir. 1996) (holding that insurer's offer, made over three months after a court order established its liability, was "timely as a matter of law"). Farmers did not immediately issue a check *at the request of Mr. Porter's counsel*, who wished to first resolve the potential Medicare and child support liens. Indeed, Mr. Porter's counsel admits that as of April 2011, she did not want a settlement check issued.

When Mr. Porter finally did seek payment, he provided Farmers with a Medicare letter disclaiming any lien arising from the "October 1, 2009" incident rather than the April 2007 accident. The very next day, and several times thereafter, Farmers requested clarification. Less than one week after receiving assurance from Medicare that it was not asserting a lien regarding the April 2007 incident, Farmers issued a check to Mr. Porter individually.

Mr. Porter argues that Farmers could have called Medicare at an earlier

- 12 -

date to resolve any confusion. But "[t]ort liability may be imposed only if there is a clear showing that the insurer, in bad faith unreasonably withholds payment of the claim." Lewis v. Farmers Ins. Co., Inc., 681 P.2d 67, 70 (Okla. 1983). Here, Farmers reasonably withheld payment to avoid incurring duplicate—or even triplicate—liability. See Porter, 2012 WL 256014, at *19 (discussing extent of Farmers' possible liability). The evidence indicates that Farmers did so "in order to protect [itself] from potential exposure to double payments." See Beers, 241 P.3d at 292. This was a "legitimate" concern, and Mr. Porter "did not produce [sufficient] contradictory evidence or any evidence suggesting [Farmers] intentionally delayed payment during this period for an improper purpose." Id. Although Ms. Luther claims the delay was "improper and [did] not meet . . . industry standards," her conclusion lacks support. Aplt. App. 458. She makes a stark assertion without explaining which industry standards Farmers purportedly violated.[2] Cf. Embry v. Innovative Aftermarket Sys. L.P., 247 P.2d 1158, 1161 (Okla. 2010) (denying summary judgment where an expert "explained *in detail* the ways in which . . . the defendants violated industry standards") (emphasis added). Moreover, she fails to acknowledge that the Medicare letter misstated the incident date. Ms. Luther's conclusory opinion simply does not create a genuine

[2] To the extent that Mr. Porter also relies on violations of the Uniform Claims Settlement Practices Act as evidence of bad faith, we deem this argument waived because he failed to raise it in his opening brief. See Colony Ins. Co. v. Burke, 698 F.3d 1222, 1234 n.17 (10th Cir. 1012). Additionally, he has never cited specific UCSPA provisions that he alleges Farmers to have breached.

issue of material fact.  See Medina, 252 F.3d at 1133.  Therefore, we cannot hold that the district erred in concluding Farmers reasonably withheld payment.

2.  The Investigation

"[W]hen presented with a claim by its insured," an insurer has a duty to "conduct an investigation reasonably appropriate under the circumstances . . . ." Newport v. USAA, 11 P.3d 190, 195 (Okla. 2000) (quotation omitted).  Where a claim of bad faith is based on an allegedly inadequate investigation, "the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information."  Timberlake Constr. Co. v. U.S. Fid. & Guar. Co., 71 F.3d 335, 345 (10th Cir. 1995).

We evaluate the adequacy of the investigation in light of all the facts that Farmers knew, or should have known, at the time Mr. Porter brought his claim. See Buzzard, 736 P.2d at 159.  As an initial matter, we conclude that August 4, 2009 is the earliest date Mr. Porter can be said to have brought a claim.  Mr. Porter admits he did not identify himself in any of the 2008 phone calls.  Further, it is undisputed that when he requested a copy of his VW policy, Mr. Porter made no mention of the accident.  Although Ms. Luther claims that Mr. Porter's calls triggered a duty to report, her conclusion lacks factual support and fails to address the fact that Mr. Porter was an unidentified caller.  Her opinion does not create a genuine issue of fact.  See Medina, 252 F.3d at 1133.  Thus, there is no evidence from which a jury could reasonably infer that Farmers' agents had adequate notice

- 14 -

of Mr. Porter's potential claim prior to August 4, 2009.  See First Bank of Turley v. Fid. & Deposit Ins. Co. of Md., 928 P.2d 298, 308 (Okla. 1996).

When Mr. Porter eventually filed a claim, Farmers promptly investigated. Both the collision report and Mr. Porter's own statements indicated it was a one-vehicle accident.  And "there were no other identified witnesses who might have contradicted any of those facts."  Bannister, 692 F.3d at 1130.  In other words, Farmers had no reason to suspect its information was erroneous or incomplete.[3] See Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 892 (10th Cir. 2006).

Moreover, there is no indication that further investigation would have changed the underlying facts already known to Farmers.  See Bannister, 692 F.3d at 1128; Timberlake, 71 F.3d at 345; Oulds, 6 F.3d at 1442.  Even if we accept Ms. Luther's conclusion that the adjuster's initial interview of Mr. Porter was inadequate, there is no evidence that further questioning would have revealed anything new.  On the contrary, Mr. Porter explicitly told the adjuster he did not recall the accident.  By Mr. Porter's own admission, he did not remember the second driver until *after* the adjuster's interview.  Aplt. App. 150–51.  Further, Trooper Rose unequivocally testified that if Farmers' adjuster had interviewed

---

[3] Although Mr. Porter testified that he had "a memory" of discussing the second vehicle with someone "pertaining to Farmers" prior to his EUO, he admits this conversation "might have been [with his own] lawyer."  Aplt. App. 928–30. This vague and contradictory testimony is insufficient to create a genuine issue of fact.  See Matsushita, 475 U.S. at 586 (explaining that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts").

him at the outset of the investigation, he would have said it was a one vehicle accident, consistent with his report.  Id. at 727–28.

Oklahoma does not require an insurer's investigation to be perfect; it need only be "reasonably appropriate under the circumstances."  Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991); see also Badillo, 121 P.3d at 1094 (rejecting a simple negligence standard).  Thus, "we are compelled to conclude that any alleged 'failure' to further investigate cannot, in this case, support [Mr. Porter's] bad faith claim."  Timberlake, 71 F.3d at 347.  A jury could not reasonably conclude on this evidence that Farmers acted in bad faith.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge